UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHERN MANAGEMENT SERVICES, INC., <br><br> Plaintiff, <br> v. <br><br> NAVIGATORS SPECIALTY INSURANCE CO., <br><br> Defendant. | Case No. 2:21-cv-00194-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Navigators Specialty Insurance Co.'s Motion for Judgment on the Pleadings (the "Motion"). Dkt. 27. The Court held a hearing on the Motion on May 24, 2022, and took it under advisement. Now, for the reasons stated below, the Court GRANTS the Motion.

## II. BACKGROUND

Northern Management Services, Inc. ("Northern Management") provides building management services to various federal entities, including federal courts. In an underlying lawsuit, Donald Russell sued Northern Management after he fell twenty feet through a grate atop a federal courthouse in Virginia.[1] Northern Management did not make an appearance in the case, so Russell moved for default judgment. The court granted default

---

[1] The underlying lawsuit is *Donald Russell v. Northern Management Services, Inc.*, No. 7:19-cv-280 (W.D. Va.). The Court takes judicial notice of the proceedings in the underlying lawsuit. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (explaining a court "may take judicial notice of court filings and other matters of public record").

judgment and conducted a trial on damages. The jury awarded over five million dollars to Russell, plus pre- and post-judgment interest, and then that award was reduced to match the *ad damnum* clause in Russell's complaint. Russell then attempted to execute his judgment, which prompted Northern Management to make a belated appearance. Northern Management attempted, and failed, to set aside the default and vacate the judgment.

After failing to vacate the judgment, Northern Management filed a claim for coverage with its excess insurer, Navigators Specialty Insurance Co. ("Navigators"). Having no notice of the underlying lawsuit until this late juncture, Navigators denied Northern Management's claim.

Northern Management then filed the instant lawsuit against Navigators, bringing a single claim for breach of contract. On February 11, 2022, Navigators filed a Motion for Judgment on the Pleadings. Dkt. 27.

In its Motion, Navigators contends that it properly denied coverage because Northern Management did not satisfy the notice provisions of the excess insurance policy. The relevant provisions of the policy are stated below:

> 6. Duties When There is an "Event," Claim or Suit
> a. You must see to it that we and any other insurers who could provide coverage are notified as soon as practicable of any "event" which may be reasonably expected to result in a claim under this policy. To the extent possible, notice should include:
> i. how, when and where the "event" took place;
> ii. the names and addresses of any injured persons and witnesses; and
> iii. the nature and location of any injury or damage arising out of the "event."
>
> b. If a claim is made or a suit is brought against any insured which may be reasonably expected to result in a claim under this policy, you must:

MEMORANDUM DECISION AND ORDER - 2

      i. immediately record the specifics of the claim or suit and the date received; and
      ii. notify us, and any other insurers who could provide coverage, as soon as practicable.

  c. You and any other involved insured must:
      i. immediately send us, and any other insurers who could provide coverage, copies of any demands, notices, summonses or legal papers received in connection with a claim or suit which may be reasonably expected to result in a claim under this policy;
      ii. authorize us to obtain records and other information;
      iii. cooperate with us in the investigation or settlement of the claim, issues relating to coverage under this policy or defense against the suit; and
      iv. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of the injury or damage to which this insurance may apply.

Dkt. 27-3, at 7 (Policy § 4, condition 6).[2]

Northern Management does not dispute the terms of the policy or that it was late in giving notice. Instead, Northern Management's entire case is predicated on the argument that Navigators had to show that it was prejudiced by Northern Management's untimely notice.

In the Motion, Navigators contends that Idaho law does not require a showing a prejudice.[3] Northern Management argues in response that excess insurers must show

---

[2] The policy is incorporated by reference in the Complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Certain written instruments attached to pleadings may be considered part of the pleading); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Ritchie*, 342 F.3d at 908. When the latter occurs, the defendant may file the referenced document, and the district court may treat such document as part of the complaint and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *Id*. The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan [.]") (cleaned up). *Id*.

[3] Navigators also maintains that it could demonstrate that it was prejudiced by the untimely notice.

MEMORANDUM DECISION AND ORDER - 3

prejudice and, in the alternative, requests certification of the question to the Idaho Supreme Court.

### III. LEGAL STANDARD

**A. Rule 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* "However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Id.*

"When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted). "A court may take judicial notice of 'matters of public record,'" such as court documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack*

*v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

As with traditional motions to dismiss, if a court grants a motion for judgment on the pleadings, leave to amend should be granted unless "the Court is satisfied that an amendment could not cure the deficiency." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).

### B. Certification to the Idaho Supreme Court

Idaho Appellate Rule 12.3 provides that a United States District Court may certify a question of law to the Idaho Supreme Court if two conditions are met: (1) the question certified is a controlling question of law in the pending action as to which there is no controlling precedent in the decisions of the Idaho Supreme Court; and (2) the immediate determination of Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation in the United States Court. Idaho App. R. 12.3(a); *see also White v. Valley Cnty.*, 2012 WL 13018504, at *1 (D. Idaho Aug. 10, 2012).

Certification is generally beneficial to assure that state law will be applied uniformly and in accordance with the interpretations given by each state's high court, state courts will have the benefit of having the final say on a matter of state law, and federal courts can avoid the difficult task of attempting to divine how a state court would rule on a matter of state law. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (noting that certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative juridical federalism").

"Use of the certification procedure in any given case 'rests in the sound discretion of the federal court.'" *Micomonaco v. Washington*, 45 F.3d 316, 322 (9th Cir. 1995)

MEMORANDUM DECISION AND ORDER - 5

(quoting *Lehman Bros.*, 416 U.S. at 391)).

### IV. ANALYSIS

Idaho law does not require that an insurer show prejudice before denying a claim. *Viani v. Aetna Ins.*, 501 P.2d 706, 712 (Idaho 1972), *overruled in part and on other grounds by Sloviaczek v. Estate of Puckett*, 556 P.2d 564 (Idaho 1977). Northern Management argues that this rule applies only to *primary* insurers, and that it is a matter of first impression whether Idaho requires an *excess* insurer to show prejudice. Northern Management argues that this Court should hold Idaho law requires a showing of prejudice or, alternatively, should certify the question to the Idaho Supreme Court.

On the other hand, Navigators argues that controlling Idaho precedent regarding late notice and prejudice applies equally to primary and excess insurers. As Navigators sees it, the Idaho Supreme Court had a contract-based rationale rather than a policy-based rationale when it rejected the prejudice rule of other jurisdictions, and the contract-based rationale does not support any distinction between primary and excess insurers.

The Idaho Supreme Court held in *Viani* that notice provisions are a condition precedent to insurance coverage, and therefore the insurer could deny coverage on that basis without also needing to demonstrate prejudice. *Id.* "*Viani* remains the law in Idaho concerning the issue of notice and the required showing when an insured does not comply with the notice provisions of an insurance policy." *Blue Cross of Idaho Health Serv. v. Atl. Mut. Ins.*, 2011 WL 162283, at *13 n.12 (D. Idaho January 19, 2011). Under *Viani*, "prejudice to the insurer [is] irrelevant." *Id.* at *21 (citing *Viani*, 501 P.2d 706).

*Viani* reaffirmed "the rule originally announced by [the Idaho Supreme Court] in

*Berg v. Associated Employers Recip. and Ill. Indem. Exch.*, 47 Idaho 386, 279 P. 627 (1929)." *Viani*, 501 P.2d at 714. In *Berg*, the Idaho Supreme Court held, "At least a reasonable or substantial compliance with the provisions of the contract relating to the furnishing of the information therein is a condition precedent to the maintenance of any action under a contract of the kind involved." 279 P. at 628. In *Viani*, the Idaho Supreme Court explained the latter "rule is not harsh; it allows the insured opportunity to offer various excuses for non-compliance as well as a factual determination as to whether notice was given 'as soon as practical' or 'immediately' depending on the specific language of the condition." *Id.*

When deciding *Viani*, the Idaho Supreme Court recognized the jurisdictional split "on the issue whether prejudice to the insurer is material." *Id.* at 713. It adopted what was then the majority rule—the no-prejudice rule.[4] *See id.* at 714 ("To settle the state of Idaho law the Court has concluded the majority rule . . . is the better reasoned rule and is fair to the various interests."). However, what was once the majority rule is now the minority rule. *Prince George's Cnty. v. Loc. Gov. Ins. Tr.*, 879 A.2d 81, 93 (Md. Ct. App. 2005) ("In the four decades since we last considered the common law rule, the majority 'no-prejudice rule' (now 'the traditional view') . . . became the minority rule."). While requiring prejudice is now the predominant rule, states differ in the minutia: some place the burden

---

[4] The "prejudice rule" refers to the rule that an insurer must have been prejudiced by the lack of notice in order to deny coverage, and the "no-prejudice rule" refers to the rule that an insurer need not be prejudiced by insufficient notice in order to deny coverage.

MEMORANDUM DECISION AND ORDER - 7

on the insured to demonstrate an absence of prejudice,[5] some place the burden on the insurer to demonstrate prejudice,[6] some have a burden-shifting framework,[7] and some include prejudice as part of the broader notice analysis.[8]

Northern Management does not challenge *Viani*. Rather, Northern Management argues that Idaho law should distinguish between *primary* and *excess* insurers as Alabama state law does. Alabama maintains the minority no-prejudice rule as applied to primary insurers but has adopted the majority prejudice rule as applied to excess insurers. *Midwest Emps. Cas. Co. v. E. Ala. Health Care*, 695 So.2d 1169, 1173 (Ala. 1997). In doing so, the Alabama Supreme Court reasoned, "excess insurers do not have the same duties and responsibilities as primary insurers that form the basis for this Court's adherence to the 'no prejudice rule' relating to untimely notice of a claim." *Id.* Northern Management contends that Idaho should adopt the same rule.

No other jurisdiction makes this distinction.[9] To be sure, many states have distinguishable rules about notice and prejudice. For instance, some states have held that

---

[5] *E.g.*, *Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 542 (Iowa 2002); *Neff v. Pierzina*, 629 N.W.2d 177, 185–86 (Wis. 2001).

[6] *E.g.*, *Tush v. Pharr*, 68 P.3d 1239, 1250 (Alaska 2003); *Seaway Port Auth. of Duluth v. Midland Ins.*, 430 N.W.2d 242, 251 (Minn. Ct. App. 1988).

[7] *E.g.*, *Liberty Mut. Ins. v. Pennington*, 573 S.E.2d 118, 124 (N.C. 2002); *Ind. Farmers Mut. Ins. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1274 (Ind. Ct. App. 2009).

[8] *E.g.*, *Kerr v. Ill. Cent. R.R. Co.*, 670 N.E.2d 759, 767 (Ill. App. Ct. 1996).

[9] *Midwest Employers Casualty Co.* cited New York and Illinois as having the same approach. However, New York subsequently statutorily adopted the majority prejudice rule. N.Y. Ins. § 3420(a)(5) (2020). Before adopting this statute, New York law held that neither primary nor excess insurers had to show prejudice but that *reinsurers* did have to show prejudice. *Am. Home Assurance Co. v. Int'l Ins.*, 684 N.E.2d

(Continued)

excess insurers were prejudiced as a matter of law when the insured gave notice shortly before or after trial.[10] And some states have distinguished between occurrence-based notice and claims-based notice.[11] But Alabama's primary/excess distinction is an anomaly, and Northern Management fails to establish any grounded reason why Idaho law mirrors, or should mirror, Alabama's primary/excess distinction.

Instead, Northern Management's argument is based on policy considerations the Alabama Supreme Court articulated in justifying its rule that excess insurers must show prejudice. Specifically, Northern Management emphasizes that the purpose of the general no-prejudice rule "is to encourage prompt notice, which allows a primary insurer to exercise early control over the claim." Dkt. 28, at 7 (quoting *Midwest Emps. Cas. Co.*, 695

---

14, 18 (N.Y. 1997); *see also Mt. Hawley Ins. v. Abraham Little Neck Dev. Grp., Inc.*, 825 F. Supp. 2d 384, 393–94 (E.D.N.Y. 2011) (explaining the enactment of New York Insurance Law § 3420(a)(5) and its effect on the issue of prejudice). Likewise, Illinois applies its version of the prejudice rule to both primary and excess insurers. *See West Am. Ins. v. Yorkville Nat. Bank*, 939 N.E.2d 288, 294 (Ill. 2010) (holding that "prejudice to the insurer" is a factor when assessing whether notice was reasonable); *Hartford Acc. & Indem. Co. v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 595 N.E.2d 1311, 1317 (Ill. App. Ct. 1992) (holding "part of the equation in determining the reasonableness of the insured actions is whether the insurer has been prejudiced by the timing of the notice," even though the insurer was an excess insurer).

[10] *See, e.g.*, *Kerr*, 670 N.E.2d at 768 ("Accordingly, we find as a matter of law that it was unreasonable for IC to withhold notice [from the excess insurer] for over six years while the case was fully litigated and appealed and the only remaining issue was the amount of damages to be awarded."); *Allstate Ins. v. Kepchar*, 592 N.E.2d 694, 700 (Ind. Ct. App. 1992) (holding as a matter of law that excess insurer was prejudiced as a matter of law "where notice was not given until over a year after trial"); *Prince George's Cnty.*, 879 A.2d at 86 (holding as a matter of law that excess insurer was prejudiced where notice was not given until after the verdict); *see also Herman Bros., Inc. v. Great W. Cas. Co.*, 582 N.W.2d 328, 336 (Neb. 1998) (holding that an excess insurer was prejudiced where notice was not given until after the underlying lawsuit was settled).

[11] *See, e.g.*, *Gazis v. Miller*, 892 A.2d 1277, 1280–81 (N.J. 2006) (holding that the prejudice rule applies in the context of occurrence policies and not claims-made polices, and that this rule applies equally to primary and excess insurers); *Union Planters Bank, N.A. v. Cont'l Cas. Co.*, 478 F.3d 759, 766 (6th Cir. 2007) (explaining that Tennessee's prejudice rule applies to occurrence-based policies and not claims-made policies); *see also Travelers Prop. Cas. Co. of Am. v. Stresscon Corp.*, 370 P.3d 140, 146 (Colo. 2016) (declining "to extend the notice-prejudice rule . . . of an occurrence-based liability policy . . . to the no-voluntary-payments clause").

MEMORANDUM DECISION AND ORDER - 9

So.2d at 1172). Excess insurers do not have the same early control, so Northern Management contends that the purpose for the no-prejudice rule is absent in the excess insurance context.

However, even assuming that the rule's purpose is indeed absent in the excess insurance context, the Idaho Supreme Court's explanation for ratifying the no-prejudice rule does not support a distinction between primary and excess insurers based on the rule's purported purpose. In *Viani*, the Idaho Supreme Court did not rely on the purpose of the no-prejudice rule. Instead, it held that the notice provision was a "condition precedent" to coverage, and as such, failure to comply with the notice provision "completely relieves the insurer of liability under the policy." *Viani*, 501 P.2d at 711. What matters is that the notice requirement is a condition precedent to coverage under the insurance contract. *Id.* ("The policy involved there contained a notice of suit condition [which] expressly made any insurance available under the indemnity policy 'subject to' the notice condition."); *id.* ("[T]he notice condition was a condition precedent to liability by the insurer under its policy."); *id.* at 712 ("A survey of the cases has not produced an instance where a complete breach of a notice of suit requirement, which is a condition precedent, such that the insurer was never aware of the suit, did not constitute a total defense to liability under the policy."); *id.* ("[W]here on similar facts the insurer failed to receive suit papers although the policy made such a condition precedent, the courts likewise upheld the insurer's defense."). Whether a term is a condition precedent is based on the contract's language, not the insurer's status as primary or excess.

What's more, *Viani* did consider that the late-notified insurer, American Casualty,

MEMORANDUM DECISION AND ORDER - 10

was one of three insurers involved in the litigation, and was "entitled to some degree of control over the litigation":

> In holding for American Casualty we recognize that an insurer has certain business interests which it is entitled to protect. As illustrated by the record here, it is entitled to some degree of control over the litigation, or, where there are multiple insurers, to refuse to accept defense of the action. Likewise, it is entitled to independently review settlement offers or make its own settlement offers. Foremost, it is entitled to see that crucial issues which could affect its eventual liability were tried and all relevant matters examined. Here, for instance, one of the insurers, Allstate, disclaims all liability under its policy due to an employer-employee policy exception. This matter clearly is of interest to American Casualty as well as Aetna, yet American Casualty never had an opportunity to contest this issue, or, insure full exploration of the issue at the first trial on the merits. . . . [I]t would seem American Casualty would have been entitled to its own opinion and opportunity to further litigate had it chosen to do so.

*Id.* at 712–13.

While American Casualty was not an excess insurer, the *Viani* court still explained that without notice, the insurer could not ensure that issues "which could affect its eventual liability" were litigated.[12] *Id.* at 713. While excess insurers may have less involvement with the litigation decisions, they still have interests to protect. *Kerr*, 670 N.E.2d at 765 ("Although generally an excess insurer does not reserve the right to participate in the defense of the claim, this is not tantamount to a surrender by the insurer of its right to protect its own interests. . . . An excess insurer should not be forced to rely on its insured or the primary insurer to protect its interests where timely notice would provide the excess insurer with an opportunity to pursue its own investigation."); *Highlands Ins. v. Lewis R.R.*

---

[12] *Viani* held that one of the other insurers, Aetna, was an excess insurer. *Id.* at 719. This part of *Viani* was overruled by *Sloviaczek v. Estate of Puckett*, 565 P.2d 564, 568 (Idaho 1977).

MEMORANDUM DECISION AND ORDER - 11

*Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir. 1993) ("[The excess insurer] could not blindly and without input rely on National, the primary insurance provider, to protect [the excess insurer's] interests once the settlement amount exceeded the primary insurance coverage because National would have no further financial interest and no incentive to protect [the excess insurer]."); *Prince George's Cnty. v. Loc. Gov. Ins. Tr.*, 859 A.2d 353, 361 (Md. Ct. Spec. App. 2004) (citing *Kerr* for the conclusion that an excess liability insurer does not surrender its right to protect its own interests); *Herman Bros., Inc.*, 582 N.W.2d at 335 (concluding that the excess insurer "was not given an opportunity to meaningfully protect its interests"). Thus, there is no policy reason to justify *not* treating an excess insurer's notice requirement as a condition precedent solely because the insurer provides excess coverage.

The Court concludes that *Viani* applies to the instant case. Under *Viani*, an insurer can deny coverage based on the insured's failure to comply with a contractual notice condition. Here, Northern Management does not dispute that it failed to comply with the notice condition. Navigators was, therefore, within its rights under the insurance contract to deny coverage.

Because *Viani* is controlling Idaho Supreme Court precedent on the matter, the Court concludes that Northern Management has failed to satisfy the first requirement for the certification. Moreover, Northern Management filed the instant lawsuit in federal court rather than state court. If Northern Management wanted to challenge Idaho precedent, it could have initiated the lawsuit in state court. "The general rule is to deny a request for certification made by the party that sought to have a federal court hear the suit." *State Farm*

MEMORANDUM DECISION AND ORDER - 12

*Mut. Auto. Ins. v. Mendoza*, 432 F. Supp. 2d 1017, 1024 n.1 (D. Ariz. 2006) (citing *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996) and *Croteau v. Olin Corp.*, 884 F.2d 45, 46 (1st Cir. 1989)). Accordingly, the Court declines to certify the question.

## V. CONCLUSION

Northern Management did not provide any notice of the underlying lawsuit to Navigators until after judgment was entered in the underlying case. Therefore, Navigators had the right under the insurance contract to deny the claim because timely notice was a condition precedent to coverage. Idaho law is settled that when notice is untimely, an insurer may deny coverage regardless of the prejudice—or purported lack of prejudice—suffered by the insurer. Accordingly, the Court GRANTS Navigators' Motion for Judgment on the Pleadings and DISMISSES this case WITH PREJUDICE.[13]

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendant's Motion for Judgment on the Pleadings (Dkt. 27) is GRANTED.
2. This case is DISMISSED WITH PREJUDICE. Judgment will be issued concurrently with this Order.

DATED: June 22, 2022

David C. Nye
Chief U.S. District Court Judge

---

[13] Because Northern Management failed to meet the mandatory notice requirement of their insurance contract, amendment cannot save the Complaint. *See Harris*, 682 F.3d at 1131.